**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER MACHON, | : | |
|     Plaintiff | : | |
| | : | CIVIL ACTION |
|          v. | : | |
| | : | NO. 11-4151 |
| PENNSYLVANIA DEPARTMENT OF | : | |
| PUBLIC WELFARE, et al., | : | |
|     Defendants | | |

**February _23_, 2012**                                                        **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

**I. INTRODUCTION**

Plaintiff Christopher Machon, a former forensic registered nurse at Norristown State

Hospital, brings this action against the Pennsylvania Department of Public Welfare, Gary D.

Alexander (Acting Secretary of Public Welfare) and Gerald Kent (CEO, Norristown State

Hospital) in their official and individual capacities.  Machon also sues the following employees

of Norristown State Hospital in their individual capacities: Maryann Chopyak (Supervisor), Traci

Cannon (Chopyak's Supervisor), Christine Puleo (Supervisor), Richard Szczurowski (Director,

Human Resources), Mary Ann Virden (Colleague), and John Miller (Employee).  Machon brings

the following claims: 42 U.S.C. § 1983 First Amendment retaliation (Count I); 42 U.S.C. § 1983

Fourteenth Amendment due process violation (Count II); 42 U.S.C. § 1983 Fourteenth

Amendment equal protection violation (Count III); 42 U.S.C. § 1983 Fourth Amendment privacy

violation (Count IV); invasion of privacy violation under Pennsylvania law (Count V); 42 U.S.C.

§ 1985 conspiracy (Count VI)[1].

Federal question jurisdiction over Counts I-IV and VI is proper pursuant to 28 U.S.C. §

1331 and 28 U.S.C. § 1343. Supplemental jurisdiction over Count V is proper under 28 U.S.C. §

1367(a). Defendants have moved to dismiss all counts of the amended complaint. For the

reasons set forth below, Defendants' motion to dismiss will be granted in part and denied in part.

## II. BACKGROUND[2]

Christopher Machon was a male forensic registered nurse ("FRN") at the Pennsylvania

Department of Public Welfare's Norristown State Hospital ("DPW").[3]

• From June 2007 through June 2009, Machon received satisfactory ratings on his

Employee Performance Reviews. Am. Compl. ¶¶ 101-03.

From approximately January 2007 through June 2009, FRN Supervisor Maryanne Denczi served

as Machon's FRN supervisor. Mot. Dismiss Am. Compl. Ex. 2, ¶ 9 (Ex. 2, "Adjudication"). On

June 20, 2009, FRN Supervisor Christine Puleo became Machon's immediate FRN supervisor.

---

[1] Machon does not provide a count number for his conspiracy claim. But Machon includes the conspiracy claim in his first amended complaint and in his response to Defendants' motion to dismiss his first amended complaint. For organizational purposes, I have designated it as Count VI.

[2] When deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Yet here, Machon initially appealed his August 2010 workplace suspension to the Pennsylvania State Civil Service Commission. See Adjudication. The Commission held hearings and made "Findings of Fact" as part of its Opinion ("Adjudication"). A state court has not reviewed the Adjudication. See id. The Third Circuit has held that such "state administrative factfinding is entitled to preclusive effect in the federal courts." Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993). Therefore, I include facts from the Adjudication and cite accordingly.

[3] In the caption of his complaint, Machon lists DPW in conjunction with Norristown State Hospital. Norristown State Hospital is a long-term psychiatric facility run by DPW. In the body of his complaint, he only refers to DPW, so I do the same.

Adjudication ¶ 12.  FRN Supervisor Maryann Chopyak worked the night shifts in the same building where Machon worked the day shifts.  Tracy Cannon served as Chopyak's supervisor. Adjudication ¶ 20.

• Beginning in 2008, Machon made formal and informal workplace harassment complaints to the following supervisors: Gerald Kent (CEO, Norristown State Hospital), Richard Szczurowski (Director, Human Resources), Maryann Chopyak (FRN Supervisor), and Traci Cannon (Chopyak's Supervisor).  Am. Compl. ¶ 22.

In those complaints, Machon alleged that he and others were wrongfully disciplined and subjected to verbal abuse by the following DPW employees: Mary Ann Virden (Colleague), John Miller (Employee), Christine Puleo (FRN Supervisor), Chopyak (FRN Supervisor) and Cannon (Chopyak's Supervisor).  Am. Compl. ¶ 22.

• In February 2009, Machon filed workplace violence/harassment complaints against several supervisors, including Cannon, and later invoked his Civil Service Administrative Rights.[4]  Am. Compl.¶ 33; Adjudication ¶ 57.

Additionally, Machon reported to law enforcement officials that his workplace witnesses who had seen him getting harassed were being threatened by unspecified Defendants.  Am. Compl. ¶ 33.  Machon also alleges that his confidential work file was improperly revealed to co-workers. According to Machon, the release of his private information spurred Defendants Cannon, Puleo, Virden, and Miller to conspire against him.  Am. Compl. ¶ 34.  Machon alleges that he was subjected "to false, pretextual and retaliatory disciplines including written warnings [and] verbal

---

[4] On January 11 and February 10, 2011, the Civil Service Commission held hearings to address Machon's appeal of his Level-Two Alternative Discipline, which was effective August 28, 2010 and in lieu of a three-day suspension from regular FRN employment.  See Adjudication.

reprimands." Am. Compl. ¶ 23.  Defendant Miller filed false allegations of workplace violence against him.  Am. Compl. ¶ 55.  Moreover, in September 2009, unspecified Defendants accused Machon of "unauthorized absence," "falsification of records," and not following the proper policies regarding the handling of work keys.  Am. Compl. ¶ 40.  Machon alleges that the rules he broke were never previously enforced against him or other FRNs.

• On November 9, 2009, Machon received a suspension for "Failure to Follow Policy and Procedure, Falsification of Records and Unreported Absence."  Adjudication ¶ 2.

• In January 2010, Machon received a three-day suspension relating to an alleged incident that took place on August 29th and 30th of the previous year.  Am. Compl. ¶ 50.

Machon alleges that the grounds ("unreported absence," "failure to follow general instruction of procedures," and "falsification of an official document")  were baseless and that similarly situated FRNs were not disciplined for committing the same infractions.  Am. Compl. ¶¶ 52, 54.

• In February 2010, Machon and other unnamed coworkers unsuccessfully tried to meet with Defendant Puleo to discuss the hostile work environment.  Am. Compl. ¶ 62.

On February 19, 2010, Defendant Cannon yelled at Machon in front of doctors, staff and patients. Cannon screamed: "get out of this office," "you don't belong here!," "get back to your unit," "people are tired of your stuff!," and "for seventeen years you have been running the game!". Mot. Dismiss, ¶¶ 63, 65, 67.  Cannon shouted the last two statements after following Machon into the nurse's office where he went to receive care after feeling flushed and lightheaded.  Am. Compl. ¶¶ 66-67.  Cannon refused to leave the nurse's office.  Machon transferred to the emergency room for additional care.  Am. Compl. ¶ 69.  Three days later, Machon filed a workplace violence/harassment complaint against Cannon.  But unspecified Defendants

dismissed the complaint as unfounded without interviewing Machon's witnesses.  Am. Compl.

¶¶ 71-72.

- In March 2010, Machon realized that a prior suspension that was supposed to be removed

    was still in his file.  Am. Compl. ¶ 77.

Defendants Kent and Szczurowski informed Machon that the suspension would be removed.  In

September 2010, Machon checked and the suspension was still in his file.  Am. Compl. ¶¶ 78,

79.  That same month, Machon filed an additional workplace harassment complaint against

Defendant Cannon.  Am. Compl. ¶ 88.

- By September 2010, Machon had already received two additional suspensions.

On May 7, 2010, Defendants Kent, Szczurowski, Miller, Chopyak, Puleo, and Cannon

"conspired and agreed to issue Plaintiff a letter of 'alternative discipline in lieu of suspension'

(ADLS) falsely alleging an unreported absence."  Am. Compl. ¶ 83.  On August 20, 2010, the

same Defendants (minus Miller) "conspired and agreed to falsely issue Plaintiff another five (5)

day suspension" for being "Absent without Leave."  Am. Compl. ¶ 84.  The August suspension

was formally changed to the ADLS equivalent of a three-day suspension.  Prior to issuing the

August suspension, Chopyak conducted a pre-disciplinary conference (PDC) in June to discuss

the charges.  Adjudication ¶ 43.  Machon's union representative was also present at the

conference.  Adjudication ¶ 44.  Chopyak then sent a PDC, without a recommendation for

punishment, to the Labor Relations Coordinator.  Adjudication ¶¶ 45, 47.  The Coordinator and

HR Director Szczurowski reviewed the report, in conjunction with statements from those

involved in the dispute (Puleo, Chopyak, Cannon, and Machon), and determined the appropriate

level of punishment.  Adjudication ¶ 53.  No one else was involved in the decision.  Machon

appealed to the Commonwealth of Pennsylvania's State Civil Service Commission.  See

Adjudication.[5]

•       On November 3, 2010, Machon's Union Representative asked unspecified Defendants to

        initiate a DPW Bureau of Opportunity investigation into Machon's "multiple complaints

        of workplace harassment, retaliation and violence."[6]  Am. Compl. ¶ 100.

That same month, Defendants Cannon and Chopyak attempted to coerce D. Lee, a DPW FRN

employee, to alter his witness statement regarding threats made against Machon in February

2009.  Am. Compl. ¶ 49.  Additionally, Defendants Miller, Kent, Cannon, Puleo, and

Szczurowski conspired together to file false charges against Machon for being absent without

leave and other unspecified infractions.  Am. Compl. ¶¶ 56, 57.  This conspiracy included

"lodging a series of false disciplinary charges against [Machon] for behavior which had always

been, and is today, a 'commonly accepted practice.'" Am. Compl. ¶ 89.  Defendant Puleo also

served Machon with a disciplinary counseling notice in front of patients and coworkers.  Am.

Compl. ¶ 96.

•       In February 2011, unspecified Defendants filed three disciplinary charges against

        Machon.  Am. Compl. ¶ 57.

---

[5] The Adjudication's "Findings of Fact" section includes a detailed discussion of the circumstances surrounding the August 2010 suspension, which stemmed from absences on June 10th and 11th of that year.  For the purposes of this opinion, I do not need to reiterate all of the Commission's findings.  In short, the dispute revolved around Machon's pattern of calling in sick prior to days off or holidays.  See Adjudication ¶¶ 26, 30.  According to the Commission, "Puleo requested medical documentation on June 10, 2010, because she had just denied appellant's last break request, appellant had left work early on other occasions, he called out frequently, and he had a negative leave balance."  Adjudication ¶ 32.

[6] Noting that Machon had filed workplace violence or harassment complaints against multiple supervisors, the Commission added: "The complaints for which investigations had been completed were determined to be unfounded."  Adjudication ¶ 57.

Machon claims that he was treated differently than similarly situated female FRNs.  He was

terminated in April 2011.  Am. Compl. ¶ 58.

## III. SUBJECT MATTER JURISDICTION

In Counts I-IV of his amended complaint, Machon alleges that the Pennsylvania

Department of Public Welfare deprived him of his constitutional rights under the First, Fourth,

and Fourteenth Amendments in violation of 42 U.S.C. § 1983.  Am. Compl. 17-20.  In response,

Defendants raise a 12(b)(1) facial attack that challenges the court's subject matter jurisdiction

under the Eleventh Amendment.[7]  Mot. Dismiss 6.

## A. Legal Standard

Rule 12(b)(1) allows the court to dismiss a suit for want of subject matter jurisdiction.

Fed. R. Civ. P. 12(b)(1).  In *Blanciak v. Allegheny Ludlum Corp.*, the Third Circuit Court of

Appeals noted that "'the Eleventh Amendment is a jurisdictional bar which deprives federal

courts of subject matter jurisdiction.'"  77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing Pennhurst

State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)).  Thus, Rule 12(b)(1) is the

proper means of raising the issue of whether the Eleventh Amendment bars federal jurisdiction.

77 F.3d at 694 n.2.  There are two types of Rule 12(b)(1) motions.  A facial attack challenges

only the court's subject matter jurisdiction.  A factual attack allows the court to question the

plaintiff's facts after the defendant files an answer.  See Mortensen v. First Fed. Sav. & Loan

Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  As Defendants have not filed an answer, their motion

---

[7] The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

is necessarily a facial attack. Mot. Dismiss 6. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000).

**B. Pennsylvania Department of Public Welfare**

The Department of Public Welfare is a Pennsylvania state agency. The Eleventh Amendment restricts private lawsuits against the states and their agencies. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 253 (3d Cir. 2010). There are only three exceptions. First, states may waive their immunity and consent to be sued. See Alden v. Maine, 527 U.S. 706, 755 (1999). Second, Congress may abrogate the states' immunity so long as it "both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." Bd. of Trustees v. Garrett, 531 U.S. 356, 363 (2001). Third, the federal courts can issue an injunction against a state officer if there is evidence of ongoing violations of federal law and the injunction will afford a plaintiff prospective relief from the illegal state action. See Seminole Tribe v. Florida, 517 U.S. 44, 73 (1996).

In this case, none of these exceptions apply. Pennsylvania has not waived its immunity to suit. See 42 Pa. Const. Stat. § 8521(b). Congress did not abrogate the Eleventh Amendment when it passed § 1983. See Quern v. Jordan, 440 U.S. 332, 345 (1979). DPW is not a state officer. Rather, DPW is "entitled to Eleventh Amendment immunity because it is an administrative agency without existence apart from the Commonwealth." Betts, 621 F.3d at 254-

55.  Therefore, this court lacks subject matter jurisdiction to hear claims filed against DPW.

Consequently, I will dismiss all claims against DPW.[8]

## IV. FAILURE TO STATE A CLAIM

### A. Legal Standard

A motion to dismiss should be granted under Rule 12(b)(6) if the moving party "under any reasonable reading of the complaint . . . may be entitled to relief."  Kerchner v. Obama, 612 F.3d 204, 207 (3d Cir. 2010) (internal quotation marks omitted).  The complaint must allege facts sufficient to "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  This "assumption of truth" is "inapplicable to legal conclusions."  Iqbal, 129 S. Ct. at 1949-50.

---

[8] In further support of their motion to dismiss all claims against DPW, Defendants note that Section 1983 provides that "persons" acting under color of state law can be found liable if they deprive others of "any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  But in *Will v. Michigan Dept. of State Police*, the Supreme Court held that states are not "persons" for purposes of § 1983.  491 U.S. 58, 71 (1989).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  But "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**B. Section 1983 Claims[9]**

**i. Official Capacity**

Machon brings suit against Gary Alexander and Gerald Kent in their official capacities as the Acting Secretary of Public Welfare and CEO of Norristown State Hospital, respectively.  In *Will v. Michigan Dept. of State Police*, the Supreme Court held that state officials "acting in their *official capacities*" are outside the class of "persons" subject to liability for *damages* under 42 U.S.C. § 1983.  491 U.S. 58, 71 (1989) (emphasis added).  But "state officials sued for *injunctive relief* in their official capacities are 'persons' subject to liability under § 1983." Hafer v. Melo, 502 U.S. 21, 24 (1991) (citing Will, 491 U.S. at 71 n.10 ) (emphasis added).  The injunctive relief requested, however, must provide prospective relief for an ongoing violation.  See Va. Office for Prot. & Advocacy v. Stewart, 131 S. Ct. 1632, 1639 (2011).  Machon has failed to allege any facts that reveal an ongoing violation.  He has also failed to indicate how his

---

[9] Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

generalized request for injunctive relief would provide prospective relief.  Therefore, I am granting Defendants' motion to dismiss all claims against Alexander and Kent in their official capacities.

## ii. Individual Capacity

### a. General

In *Hafer v. Melo*, the Supreme Court held "that state officials sued in their *individual* capacities are 'persons' for purposes of § 1983" damages.  Hafer, 502 U.S. at 23 (emphasis added).  But "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  The Supreme Court has held that "'state employment is generally sufficient to render the defendant a state actor.'"  Id. at 49 (citations omitted).

### b. Gary Alexander

Machon brings suit against Gary D. Alexander in his individual capacity.  Machon lists Alexander as a Defendant in all four § 1983 claims.  Yet "[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S. Ct. at 1948.  Although a government official does not need to

participate directly, he or she "must have had some sort of personal involvement in the alleged unconstitutional conduct." Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 71-72 (3d Cir. 2011).

Here, Machon fails to specify any acts committed by Alexander. Machon states that Alexander is the highest official with decision making authority at DPW and accuses him of failing "to enforce defendant's purported anti-reprisal customs, policies and practices." Am. Compl. § 3  Yet Machon fails to allege facts that, if proven, would demonstrate Alexander's involvement in any of the alleged constitutional violations. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). He only offers the bald assertion that Alexander "knew, or should have known," that NSH employees were not following workplace policies. Am. Compl. § 30. He does not allege any facts indicating that Alexander personally directed his termination or participated in any of the other alleged violations. He also does not allege any facts that Alexander had contemporaneous, personal knowledge of the termination and acquiesced in it. See id. Contrary to *Rode*, Machon's amended complaint implicitly rests "on the doctrine of respondeat superior." Evancho, 423 F.3d at 353 (citing Rode, 845 F.2d at 1207).

Therefore, I find that Machon's § 1983 claims, as applied to Alexander, fail to meet the Third Circuit's standard "for a legally adequate civil rights complaint." Id. Although "the discovery process is designed to enable a plaintiff like [Machon] to undercover evidence that may support the allegations set forth in a complaint, a court is not required to assume that a plaintiff can prove facts not alleged." Id. at 354. Therefore, I will dismiss all remaining claims in Counts I-IV against Defendant Alexander.

12

In summary, I will dismiss all clams against Defendants DPW and Alexander.  I will also dismiss all claims against Kent, in his official capacity.  Therefore, I will only address the claims below as they pertain to the remaining Defendants.

### iii. Count I: 42 U.S.C. § 1983 - First Amendment Retaliation

Machon brings a First Amendment retaliation claim against the following Defendants in their individual capacities: Kent, Szczurowski, Cannon, Puleo, Chopyak, Virden, and Miller. Seeking monetary damages, Machon alleges that he was subjected to retaliatory harassment for his formal and informal complaints about workplace violence and his report to law enforcement officials regarding the intimidation of his witnesses.  The alleged harassment primarily consisted of false charges, verbal abuse, and unwarranted suspensions.  For example, Miller filed false allegations of workplace violence against him and Cannon berated him in front of others in the hospital.  Am. Compl. ¶ 55; Mot. Dismiss ¶¶ 63, 65, 67.  On May 7, 2010, Defendants Kent, Szczurowski, Miller, Chopyak, Puleo, and Cannon "conspired and agreed to issue Plaintiff a letter of 'alternative discipline in lieu of suspension' (ADLS) falsely alleging an unreported absence."  Am. Compl. ¶ 83.  On August 20, 2010, the above Defendants (minus Miller) issued Machon an unwarranted five-day suspension.  Am. Compl. ¶ 84.

Machon's First Amendment retaliation claim is analyzed under the following three-step framework:

> (1) the employee must demonstrate that his/her speech is protected, that is, it addresses a matter of public concern and the 'employee's interest in the speech outweighs' the employer's countervailing interest 'in promoting workplace efficiency and avoiding workplace disruption' . . . (2) the employee must prove that his/her speech was a 'substantial or motivating factor' in the retaliatory action against him/her, which, if proven; (3) shifts the burden to the employer to prove that the 'allegedly retaliatory action would have been taken absent the protected [speech].'

Reilly v. City of Atlantic City, 532 F.3d 216, 224 (3d Cir. 2008) (citations omitted).  The first

step is a question of law, and the second step is a question of fact.  See Gorum v. Sessoms, 561

F.3d 179, 184 (3d Cir. 2009).

In order to answer the first question, "Whether an employee's speech addresses a matter

of public concern," I must look to the "content, form, and context of a given statement, as

revealed by the *whole record*."  Connick v. Myers, 461 U.S. 138, 147-48 (1983) (emphasis

added).  At this stage of the litigation process, the record is incomplete.  Therefore, I will deny

Defendants' motion to dismiss Count I.

### iv. Count II: 42 U.S.C. § 1983 - Fourteenth Amendment Due Process

Machon brings a Fourteenth Amendment due process claim against Defendant Kent, in

his individual capacity.  Seeking monetary damages, Machon does not specify whether he is

bringing procedural and/or substantive due process claims.  But the general language of his

amended complaint suggests that he is bringing both against Kent.

*a. Procedural Due Process*

Machon alleges that Defendants terminated him in April 2011 "without affording him

notice or an opportunity to be heard."  Am. Compl. ¶ 117.

> To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff
> must allege that (1) he was deprived of an individual interest that is encompassed within
> the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the
> procedures available to him did not provide 'due process of law.'

Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).  Machon advances two

individual interest claims: (A) Right to continued employment; (B) Liberty interest in his

reputation.

• *Right to Continued Employment*

Defendants concede that Machon meets step one by alleging the deprivation of his right to continued employment. Mot. Dismiss 13. But Defendants assert that Machon fails to meet step two by alleging that the procedures available to him to challenge that deprivation were inadequate. Defendants argue that Machon never put them on fair notice of a procedural violation and that the 2011 State Civil Service Commission hearings afforded him due process. Mot. Dismiss 13.

Although it is true that the State Civil Service Commission held hearings, those hearings only addressed Machon's August 2010 suspension. See Adjudication. The Commission did not address Machon's termination, which came after the hearings. And the record is unclear as to whether Machon was afforded any other opportunities to be heard. The discovery process will enable the parties to address the collective bargaining agreement's grievance procedure and its application to Machon's procedural due process claim. Therefore, I will deny Defendants' motion to dismiss the claim regarding Machon's right to continued employment.

• *Liberty Interest in Reputation*

For Machon "to make out a due process claim for deprivation of a liberty interest in reputation, [he] must show a stigma to his reputation plus deprivation of some additional right or interest." Hill, 455 F.3d at 236. The Third Circuit refers to this requirement as the "stigma-plus" test. Id. To satisfy the "stigma" requirement, Machon must allege "that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." Id. (internal citations omitted). Machon, however, does not allege any facts that implicate Kent, who is the only remaining Defendant on this count. Machon only alleges that Defendants Cannon, Chopyak,

15

Miller, Virden, and Puleo "maliciously gossiped and publicly disclosed" stigmatizing statements about his job performance.  Am. Compl. ¶ 93.  Machon singles out Puleo, not Kent, for continually making "false statements, communications and disclosures" about him in public.  Only Puleo allegedly served Machon "with a disciplinary counseling notice in full view of patients and plaintiff's coworkers."  Am. Compl. ¶¶ 95-96.  Yet Machon does not bring his Fourteenth Amendment due process claim against any of the Defendants besides Kent.

As previously explained, § 1983 claims "cannot be predicated solely on the operation of respondeat superior."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  To prevail against Kent, Machon's complaint had to allege that Kent was personally involved in the harm to his reputation.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Id.  Machon, however, does not make any such allegations against Kent.  Therefore, Machon's damages claim stemming from his liberty interest in his reputation fails.

b. Substantive Due Process

"To prevail on a substantive due process claim challenging a state actor's conduct, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'"  Hill, 455 F.3d at 235 n.12 (citing Nicholas v. Pa. State Univ., 227 F.3d 133, 139-40 (3d Cir. 2000)).  A property interest can only qualify for substantive due process protection if it is "fundamental" under the United States Constitution.  Hill, 455 F.3d at 235 n.12 (citing Nicholas, 227 F.3d at 140).  The Third Circuit "has held explicitly that public employment is not a fundamental right entitled to substantive due

process protection." Id. at 235 n.12 (citing Nicholas, 227 F.3d at 142-43).  Therefore, I will grant

Defendants' motion to dismiss Machon's substantive due process claim.[10]

**v. Count III: 42 U.S.C. § 1983 - Fourteenth Amendment Equal Protection**

Machon brings a Fourteenth Amendment equal protection claim against Defendant Kent,

in his individual capacity.  Machon alleges that Kent deprived him of his Fourteenth Amendment

right to equal protection by treating him differently than "similarly situated female FRN

coworkers or other employees who did not engage in protected activities."  Am. Compl. ¶ 121.

Machon alleges that Defendant Kent punished him for behavior that was commonly accepted

within the hospital.  Yet Kent did not discipline Machon's female colleagues who committed the

same alleged infractions.  Am. Compl. ¶ 89.

At first glance, Machon appears to adopt a "class of one" theory, which enables him to

allege that he was "intentionally treated differently from others similarly situated and that there is

no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S.

562, 564 (2000).  Under the "class of one" theory, Machon does not need to assert "that the

different treatment was based on [his] membership in any particular class."  Engquist v. Or.

Dep't of Agric., 128 S. Ct. 2146, 2148 (2008).  Therefore, to state a claim under the "class of

one" theory, Machon must allege "that (1) defendant treated him differently from others similarly

situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the

difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

Machon, however, cannot bring a claim under the theory because the Supreme Court has held

---

[10] "To the extent [Machon's] substantive due process claim [is] based not only on loss of his job, but also on reputational injury that decreased his 'ability to earn a living,' it also fails."  Hill, 455 F.3d at 235 n.12 (citing Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399-404 (3d Cir. 2000)).

that "a 'class-of-one' theory of equal protection has no place in the public employment context."

Engquist, 128 S. Ct. at 2148-49.  For the state "[t]o treat employees differently is not to classify

them in a way that raises equal protection concerns.  Rather, it is simply to exercise the broad

discretion that typically characterizes the employer-employee relationship."  Id. at 2155.

> Under a traditional equal protection claim, the Third Circuit has held:

> To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection,
> plaintiffs must prove the existence of purposeful discrimination. They must demonstrate
> that they "receiv[ed] different treatment from that received by other individuals similarly
> situated." Specifically to prove sexual discrimination, a plaintiff must show that any
> disparate treatment was based upon . . . gender.

Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992) (citing Andrews v.

Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)).  So Machon argues that Kent discriminated

against him because he was a *male* forensic registered nurse.  Yet Machon does not provide any

evidence that the alleged discrimination was due to his gender.  He does not offer examples of

other male nurses receiving similar treatment.  Nor does he provide any examples of female

nurses receiving special treatment.  At best, he offers only a "thread-bare recitation of the

elements" that cannot survive post-Iqbal.  Therefore, I will grant Defendants' motion to dismiss

Machon's Fourteenth Amendment equal protection claim.

### vi. Count IV: 42 U.S.C. § 1983 - Fourth Amendment Invasion of Privacy

Machon brings a Fourth Amendment invasion of privacy claim against the following

Defendants, in their individual capacities: Kent, Szczurowski, Cannon, Puleo, Chopyak, Virden,

and Miller.  Machon alleges that Defendants violated his privacy when they publicly disclosed

information regarding his workplace performance to the public, including coworkers and

patients.  Am. Compl. ¶¶ 128-29.  The Third Circuit has identified two types of privacy interests:
(1) "individual interest in avoiding disclosure of personal matters"; (2) "interest in independence
in making certain kinds of important decisions".  C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159,
178 (3d Cir. 2005).  The first type of privacy interest applies to Machon's claim.

The Third Circuit has held that "'[t]he right not to have intimate facts concerning one's
life disclosed without one's consent'" is a "'venerable [right] whose constitutional significance
we have recognized in the past.'"  Id. at 179 (citing Bartnicki v. Vopper, 200 F.3d 109, 122 (3d
Cir. 1999)).  And "[t]he touchstone of constitutional privacy protection is whether information at
issue is 'within an individual's reasonable expectations of confidentiality.'"  Doe v. Luzerne, 660
F.3d 169, 175 (3d Cir. 2011) (citing C.N., 430 F.3d at 179; Malleus v. George, 641 F.3d 560, 564
(3d Cir. 2011)).  Yet the Third Circuit has also held that a right to privacy is not absolute and can
be outweighed by the government's interest in disclosure.  See Trade Waste Mgmt. Ass'n v.
Hughey, 780 F.2d 221, 234 (3d Cir. 1985).

Defendants have raised a qualified immunity defense.  Mot. Dismiss 20.  At this stage of
the litigation process, the record is unclear as to what specific information the Defendants
revealed.  I cannot determine if the information falls within Machon's reasonable expectation of
confidentiality.  See Doe, 660 F.3d at 175.  Nor can I conduct a fair balancing test that takes into
consideration the Defendants' potential interest in disclosure.  In Thomas v. Independence Twp.,
the Third Circuit held that "a plaintiff has no pleading burden to anticipate or overcome a
qualified immunity defense, and a mere absence of detailed factual allegations supporting a
plaintiff's claim for relief under § 1983 does not warrant dismissal of the complaint or establish

defendants' immunity." 463 F.3d 285, 289 (3d Cir. 2006). Yet the Third Circuit added that a

defendant cannot frame a qualified immunity defense in the absence of factual specificity. See

id. Therefore, I will order Machon to file a more definite statement of the facts underlying his

claim. See Fed. R. Civ. P. 12(e). And I will reserve judgment as to Count IV.

## C. State Law Claim

### i. Count V: Pennsylvania Tort Claim for Invasion of Privacy

Machon brings an invasion of privacy[11] state law tort claim against the following

defendants in their individual capacities: Alexander, Kent, Szczurowski, Cannon, Puleo,

Chopyak, Virden, and Miller. Machon alleges that Defendants disclosed private information

about his "job performance to, and in the presence of, plaintiff's coworkers and patients." Am.

Compl. ¶ 134.

Pennsylvania courts have recognized four invasion of privacy torts: "[1] unreasonable

intrusion upon the seclusion of another, [2] appropriation of the other's name or likeness, [3]

unreasonable publicity given to another's private life, and [4] publicity that unreasonably places

the other in a false light before the public . . . ." Burger v. Blair Med. Assocs., Inc., 964 A.2d

374, 376 (Pa. 2009) (citing Restatement (Second) of Torts §§ 652B-652E). Although Machon

does not specify, his claim fits best under category three.[12] The elements of the category three

---

[11] Machon includes an accusation of defamation in the opening section of his amended complaint but then under Count V only includes a claim for invasion of privacy. Therefore, I will only address the invasion of privacy claim.

[12] The pleadings are unclear as to whether Machon's claim also falls under category 4, which requires that the publicized information is *false*. See Restatement (Second) of Torts § 652E. Machon mentions in his amended complaint that Defendants "made malicious, *false* and unlawful disclosures" about his job performance "to, and in the presence of the public and plaintiff's coworkers and patients." Am. Compl. ¶ 129 (emphasis added). But Machon only offers vague generalizations regarding the content of that allegedly false information.

tort are: "(1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person and (4) is not of legitimate concern to the public."  Harris by Harris v. Easton Pub. Co., 483 A.2d 1377, 1384 (Pa. Super., 1984).  According to Machon, Defendants shared private information about his job performance "to, and in the presence of the public and plaintiff's coworkers and patients."  Am. Compl. ¶ 129.

Defendants only contest the first element.  They argue that the disclosures about Machon's job performance do not constitute "publicity."  The Pennsylvania Supreme Court has held that "[t]he element of 'publicity' requires that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.  Disclosure of information to only one person is insufficient."  Burger, 964 A.2d at 378.  But the Pennsylvania Superior Court has held that publication to a group of seventeen people is sufficient to constitute publicity.  See Harris, 483 A.2d at 1385-86.  Machon alleges that Defendants Cannon, Chopyak, Miller, and Virden publicly disclosed private information about his employment performance to coworkers and other hospital staff members.  Am. Compl. ¶ 93.  Additionally, he alleges that Defendant Puleo disclosed private information about him in public areas where patients and others could hear.  Am. Compl. ¶ 95.  Therefore, Defendants did not disclose the private information to the "public at large," but neither did they disclose it to "only one person."  Burger, 964 A.2d at 378.  The number of people who overheard the disclosure is a question of fact for the fact finder.

Defendants also raise a sovereign immunity defense to the claim for invasion of privacy.  Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the

scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Cons. Stat. Ann. § 2310. Machon counters that the Defendants were not "acting within the scope of their duties" when they publicly disclosed information regarding his job performance history. Pennsylvania has adopted the Restatement (Second) of Agency's definition of conduct "within the scope of employment." According to the Restatement, "'conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master . . . .'" Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000) (citing Restatement (Second) of Agency § 228). At this stage of the litigation process, I do not have enough facts to rule on the Defendants' "publicity" and "sovereign immunity" defenses. Therefore, I will deny Defendants' motion to dismiss Count V against Defendants Cannon, Puleo, Chopyak, Virden and Miller without prejudice to raise at a later stage of the litigation process. Machon, however, has not alleged any facts implicating Defendants Alexander, Kent or Szczurowski, so I will dismiss the claim against them.

**D. Count VI: 42 U.S.C. § 1985 conspiracy**

Machon brings a § 1985 conspiracy claim against unspecified Defendants. By not specifying Defendants, Machon fails to clarify which facts apply to this claim. In his amended complaint, Machon only offers broad generalizations about Defendants Kent, Szczurowski, Miller, Chopyak, Puleo, and Cannon conspiring against him. Am. Compl. ¶¶ 83-84.

Machon does not identify an applicable subsection of § 1985, but he likely brings his

22

claim under § 1985(3) ("Depriving persons of rights or privileges").  To state a claim under §

1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983).  The Third Circuit

has elaborated that "a plaintiff must allege both that the conspiracy was motivated by

discriminatory animus against an identifiable class and that the discrimination against the

identifiable class was invidious."  Farber v. City of Patterson, 440 F.3d 131, 135 (3d Cir. 2006).

Machon has alleged an identifiable class based on gender.  But he has failed to allege any

evidence whatsoever of "invidiously discriminatory animus" against that class of *male* FRNs.

U.S. v. Breckenridge, 403 U.S. 88, 102 (1971).  In order to state a claim for relief under §

1985(3), Machon would need to show that the Defendants deprived him of his constitutional

rights because he was a man.  See id.  Machon, however, only offers generalized accusations

devoid of any factual support.  Therefore, I will grant Defendants' motion to dismiss Machon's

42 U.S.C. § 1985(3) claim.

## V. CONCLUSION

For the reasons stated above, I will dismiss all claims against Defendants DPW and

Alexander.  I will also dismiss all claims against Defendant Kent, in his official capacity.  I will

deny Defendants' motion to dismiss Count I as to Defendants Kent, Szczurowski, Cannon,

Puleo, Chopyak, Virden, and Miller.  I will also deny Defendants' motion to dismiss Machon's

Count II procedural due process claim regarding the right to continued employment against

Defendant Kent.  But I will grant Defendants' motion to dismiss Machon's Count II substantive

due process claim.  I will also grant Defendants' motion to dismiss Machon's Count III

Fourteenth Amendment equal protection claim.  I will reserve judgment as to Defendants'

qualified immunity defense to Plaintiff's Count IV claim.  I will deny Defendants' motion to

dismiss Count V without prejudice as to Defendants Cannon, Puleo, Chopyak, Virden and

Miller, but I will grant it as to Defendants Alexander, Kent, and Szczurowski.  Finally, I will

grant Defendants' motion to dismiss Machon's Count VI conspiracy claim.

| Count(s) | Motion to Dismiss | Defendant(s) |
|---|---|---|
| I: 1st Amendment Retaliation (42 U.S.C. § 1983) | Denied | Kent, Szczurowski, Cannon, Puleo, Chopyak, Virden, Miller |
| II: 14th Amendment Due Process (42 U.S.C. § 1983) | Denied – Procedural Due Process, Right to Continued Employment<br><br>Granted – Substantive Due Process | Kent<br><br><br><br>Kent |
| III: 14th Amendment Equal Protection (42 U.S.C. § 1983) | Granted | Kent |
| IV: 4th Amendment Invasion of Privacy (42 U.S.C. § 1983) | Reserve Judgment | Kent, Szczurowski, Cannon, Puleo, Chopyak, Virden, Miller |
| V: Pennsylvania Tort Claim for Invasion of Privacy | Denied (without prejudice)<br><br>Granted | Cannon, Puleo, Chopyak, Virden, Miller<br><br>Alexander, Kent, Szczurowski |
| VI: Conspiracy (42 U.S.C. § 1985) | Granted | Unspecified |

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to: